UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| GEORGE BOGHOS HAJJAR, | ) | No. CV 14-1633-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 10, 2014, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 12, 2014, and April 11, 1014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 4, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 20, 1957. [Administrative Record ("AR") at 71, 210.] He has past relevant work experience as a retail salesperson -- selling shoes and lingerie/women's accessories. [AR at 82, 210, 243.]

On August 24, 2006, plaintiff protectively filed an application for Supplemental Security Income payments. [AR at 77, 200.] In his application, plaintiff alleged disability beginning on August 24, 2006. [Id.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 55.] A hearing was held on January 30, 2008. [AR at 21-39.] On February 29, 2008, the ALJ denied plaintiff's claim ("2008 Decision"). [AR at 12-20.] On September 26, 2008, the Appeals Council denied plaintiff's request for review and affirmed the ALJ's decision. [AR at 1-4.]

On November 14, 2008, plaintiff filed a federal action in case number CV 08-7468-PLA. On September 30, 2009, the Court reversed the Commissioner's 2008 Decision and remanded the case for further proceedings ("2009 Opinion") [AR at 271-89] to consider (1) whether plaintiff's speech impairment met Medical Listing 2.09; and (2) plaintiff's credibility concerning his limitations, "especially in light of Dr. Mesrobian's findings"[1] [AR at 289.]

On remand, a supplemental hearing was held on September 13, 2010, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 226-49.] A vocational expert ("VE") also testified. [AR at 243-48.] On January 6, 2011, the ALJ issued a partially favorable decision in which she again found that plaintiff was not disabled due to his speech impairment ("2011 Decision"). [AR at 200-14.] This time, however, she also found that plaintiff was disabled as of April 1, 2009, due to a mental impairment. [AR at 212-14.] On

---

[1] The Court found that all of the ALJ's reasons for rejecting the medical opinions of plaintiff's treating physician, Raffi Mesrobian, M.D., regarding plaintiff's limitations, were insufficient. [AR at 284.] The Court also found that "the ALJ actually credited much if not all of plaintiff's testimony concerning his limited ability to speak, and failed to provide any cogent reasons based on specific evidence for disbelieving plaintiff's subjective symptoms . . . ." [AR at 283.]

1  February 3, 2011, plaintiff filed a written notice of exceptions to the 2011 Decision. [Joint
2  Stipulation ("JS") at 2.] When the Appeals Council affirmed the decision on January 28, 2014 [AR
3  at 187-89], the ALJ's 2011 Decision became the final decision of the Commissioner. See Sam
4  v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

# IV.

# THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing

that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In her 2011 Decision, the ALJ at step one found that plaintiff had not engaged in substantial gainful activity since August 24, 2006, the alleged onset date.[2]  [AR at 204.]  At step two, the ALJ concluded that plaintiff has the following severe impairments: "status post carcinoma/malignant neoplasm of the larynx with residual hoarseness, calcified tendonitis of the right shoulder, and depressive disorder."  [Id.]  At step three, the ALJ determined that prior to April 1, 2009, plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments in the Listings.  [Id. at 205.]  The ALJ further found that prior to April 1, 2009, plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. § 416.967(c),[4] "that does not require good communication skills and does not involve engaging in prolonged oral communications."  [AR at 207.]

At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that since August 24, 2006, plaintiff is unable to perform any of his past relevant work, either as a shoe salesperson or as a lingerie salesperson.  [AR at 209, 244.]  At step five, based on plaintiff's RFC,

---

[2] The ALJ concluded that plaintiff had "last earned monies from paid work activity in calendar year 2003 and did not earn any monies from paid activity in subsequent calendar years."  [AR at 204.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] 20 C.F.R. § 416.967(c) defines "medium work" as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."

vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "food preparer" (Dictionary of Occupational Titles ("DOT") No. 522.686-014), "laundry worker" (DOT No. 361.684-014), and "janitor/cleaner" (DOT No. 381.687-018). [AR at 211, 245.] Accordingly, the ALJ determined that plaintiff was not disabled at any time prior to April 1, 2009. [AR at 212.]

The ALJ also determined that beginning on April 1, 2009, plaintiff exhibited an impairment or combination of impairments that met medical Listing 12.04, Affective/Depressive Disorder, because the record demonstrated that he had moderate restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.[5] [AR at 212-14.] Accordingly, the ALJ determined that plaintiff became disabled on April 1, 2009, and continued to be disabled through the date of the decision. [AR at 214.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) failed to properly evaluate plaintiff's speech impairment under Listing 2.09; (2) rejected the opinion of plaintiff's treating physician, Dr. Mesrobian, regarding plaintiff's symptoms and limitations; and (3) rejected plaintiff's subjective symptom testimony. [JS at 3.][6]

As set forth below, the Court agrees with plaintiff and remands for payment of benefits.

/

/

/

---

[5] An impairment "functionally equals" a listed impairment if it will result in "marked" limitation in two domains of functioning or an "extreme" limitation in one. See 20 C.F.R. § 416.926a(a).

[6] Because the parties have not numbered the pages of the Joint Stipulation, for ease of reference the Court will use the ECF-generated page numbers.

A.   LISTING 2.09

Listing 2.09 requires a finding of disability for an individual with "loss of speech due to any cause, with inability to produce by any means speech that can be heard, understood, or sustained." 20 C.F.R., pt. 404, subpt. P, app. 1, § 2.09. Social Security Ruling ("SSR")[7] 82-57 provides an explanation regarding "how loss of speech is to be evaluated" by the ALJ when assessing disability. SSR 82-57. The policy statement explains:

> Ordinarily, when an individual's impairment prevents effective speech, the loss of function is sufficiently severe so that an allowance under Listing 2.09 is justified on the basis of medical considerations alone, unless such a finding is rebutted by work activity. To speak effectively, an individual must be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in social and vocational settings. These criteria are applicable to the production of speech whether by natural function of the voice mechanism or by the use of a prosthetic device.
>
> Three attributes of speech pertinent to the evaluation of speech proficiency are: (1) audibility -- the ability to speak at a level sufficient to be heard; (2) intelligibility -- the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) functional efficiency -- the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time. When at least *one* of these attributes is missing, overall speech function is not considered effective.

SSR 82-57.

In the ALJ's 2008 Decision, the ALJ determined that plaintiff's speech impairment did not meet Listing 2.09 because plaintiff did not present "any loss of speech or complete inability to speak," and because this Listing only "applies to individuals who experience 'loss of speech,' not just difficulties with speech communications." [AR at 15.] This Court found that the ALJ applied an improper legal standard when she required a "complete inability to speak" in evaluating plaintiff's speech impairment under this Listing. [AR at 279 (citing 20 C.F.R., pt. 404, subpt. P, app. 1, § 2.09; SSR 82-57; Meraz v. Barnhart, 300 F. Supp. 2d 935, 941 (C.D. Cal. 2004) (finding the plaintiff who could not sustain speech for an extended period of time above a hoarse whisper

---

[7] SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

disabled because "Listing 2.09 does not require 'an absolute inability to produce speech.' Rather, . . . Listing 2.09 may be met if a claimant's condition prevents *effective* speech."))]. The Court found that because in plaintiff's case the ALJ "only analyzed whether plaintiff was able to speak at all, she failed to properly consider whether plaintiff's speech limitations met Listing 2.09." [AR at 280.]

In the 2011 Decision, the ALJ specifically stated that plaintiff did not meet Listing 2.09 because there is no indication in the record that he "exhibited 'loss of speech due to any cause, with inability to produce by any means speech that can be heard, understood or sustained.'" [AR at 205.] The ALJ found that the record shows plaintiff "has been experiencing difficulties with speech communications due to residual hoarseness and that he has not experienced any 'loss of speech,' near inability to speak, or complete inability to speak." [Id. (citing 126-86, 354-491).] The ALJ cited to the October 2006 records of plaintiff's treating physician, Dr. Mesrobian, who reported that plaintiff "exhibits hoarseness"[8] [id. (citing id. at 149)]; the October 2006 report of consultative examiner, Sean To, M.D., who reported that plaintiff exhibited a very hoarse voice and spoke softly during the examination [id. (citing id. at 144)]; and the November 2006 report of medical consultant N.J. Rubaum, M.D., who reported that plaintiff "experienced a very hoarse voice for eight months, but [now is] recovering'" [id. (quoting id. at 153).]

The ALJ also stated that she relied on her observations of plaintiff during the hearings on January 30, 2008, and September 13, 2010, to determine he did not meet Listing 2.09. [Id.] Specifically, she observed that plaintiff "retained the capacity to speak and exhibited audible and intelligible speech." [Id.] She also observed that plaintiff's "periodic cessations of speech during the hearings appeared to stem from [plaintiff's] feelings of anxiety and not from any inability . . . to engage in speech communication." [Id.] She concluded that if plaintiff had experienced a loss of speech at the Listing level, "he would not have been able to testify in a functionally efficient manner at these two lengthy hearings . . . ." [Id.]

---

[8]   The ALJ slightly misstates Dr. Mesrobian's findings, as he actually reported that plaintiff had "*difficulty communicating* because of hoarseness." [AR at 149 (emphasis added).]

8

Finally, the ALJ stated that she considered two documents filed by plaintiff's counsel on June 24, 2008, and December 1, 2010, described by the ALJ as "regarding medical listing 2.09," and in which "counsel has argued that [plaintiff's] speech impairment meets Listing 2.09 as defined by Social Security Ruling 82-57." [Id. at 206 (citing id. at 122-24, 353)[9].] The ALJ concluded:

> Although the undersigned has given due consideration to the opinions of the claimant's attorney, the undersigned finds that the criteria of medical listing 2.09 are not met, because the record shows that since the alleged onset date, the claimant has exhibited speech that is audible, intelligible, and functionally efficient.

[Id.]

After reviewing the record, the Court agrees with plaintiff's assertion that the ALJ again failed to properly evaluate plaintiff's speech impairment under Listing 2.09. [JS at 5.]

In her 2008 Decision, the ALJ specifically noted that the record "shows that claimant lacks the ability to engage[] in prolonged speech or speak for more than a few minutes at a time." [AR at 17.] As she did in that earlier decision, in the 2011 Decision the ALJ acknowledged that the record shows that plaintiff "is limited in the ability to communicate orally and *cannot engage in prolonged oral communications.*" [AR at 208 (emphasis added).] She stated that this finding "is consistent" with the reports of Dr. Mesrobian and Dr. To, and with her own observations at the two hearings. [Id.] In support, she notes that Dr. Mesrobian stated in December 2007 that plaintiff "'is hoarse,' experiences shortness of breath 'easily,' carries water with him 'at all times' because of his dry throat, and 'is unable to carry normal conversations as he loses his voice mid- sentence.'" [Id. (citing AR at 178, 179).] The ALJ then stated that at both of the hearings she found plaintiff's speech to be "audible, intelligible, and *functionally efficient.*" [Id. (emphasis added).] As previously noted, however, in order to be "functionally efficient," the claimant must have the ability to produce *and sustain* a serviceably fast rate of speech output over a useful period of time. SSR 82-57. The ALJ's acknowledgment of plaintiff's inability to engage in prolonged oral communications is facially

---

[9] The document at AR 353 (a December 1, 2010, letter from plaintiff's counsel at Exhibit 15E) actually contains a response by plaintiff's counsel to the ALJ's proffer of an October 19, 2010, consultative psychological evaluation report from Gabriela Gamboa, Psy.D./MSLA; counsel never mentions Listing 2.09 or SSR 82-57 in that response. [See AR at 353.]

inconsistent with her finding that plaintiff is able to sustain a serviceably fast rate of speech over a useful period of time.

The ALJ attempts to bolster her conclusion that plaintiff's speech was "functionally efficient," with her "observation" that any "cessation of speech at the hearings appeared to stem from [plaintiff's] feelings of anxiety and not from any inability of [plaintiff] to engage in speech/oral communication." [AR at 208.] The ALJ provides no explanation for how her observations led her to arrive at this conclusion. It is well settled that an ALJ must set out her reasoning and the evidentiary support for her interpretation of the medical evidence, and may not render her own medical opinion or substitute her own diagnosis for that of a physician. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony that he took a road trip; there was no medical evidence to support the ALJ's determination); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).[10] Here, the ALJ improperly substituted her own lay opinion as to the medical reason for plaintiff's speech cessations based on her unsupported "observations" of plaintiff at the hearings.

---

[10] As the Court noted in its 2009 Opinion, the ALJ could have -- and in hindsight, perhaps should have -- arranged at that time for plaintiff to receive a speech proficiency assessment by an otolaryngologist or speech therapist who could have addressed the audibility, intelligibility, and functional efficiency of plaintiff's speech. [See AR at 280 n.4 (citing SSR 82-57)]; see Reed v. Massanari, 270 F.3d 838, 843 (9th Cir. 2001) (where available medical evidence is insufficient to determine the severity of the claimant's impairment, the ALJ should order a consultative examination by a specialist); accord Kish v. Colvin, 552 Fed. App'x 650, 651 (9th Cir. 2014); see generally Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a special duty to fully and fairly develop the record and to assure the claimant's interests are considered. This duty exists even when the claimant is represented by counsel.") (citations omitted). In light of plaintiff's subsequent surgical treatments that have improved his speech [see, e.g., AR at 234-36, 445-47, 456-59], such an examination now would be irrelevant.

The Court also is not persuaded by the ALJ's reasoning that "[i]f the claimant had experienced 'loss of speech' at the listing level, he would not have been able to testify in a *functionally efficient* manner at these two *lengthy* hearings before the undersigned." [AR at 205 (emphasis added).] First, neither of these two hearings was exceptionally "lengthy." The 2008 hearing commenced at 8:33 a.m., and concluded at 8:57 a.m. [AR at 23, 39]; the 2010 hearing commenced at 10:15 a.m. and concluded at 10:47 a.m. [AR at 228, 249.] With regard to the 2008 hearing, plaintiff's testimony took up only five pages of the nineteen page transcript. [AR at 26-30.] At the beginning of that hearing, the ALJ specifically stated that she would try to ask questions such that plaintiff would not "have to give as much of a response to make it a little bit easier . . . ." [AR at 27.] She seems to have met this objective, as only one of plaintiff's responses was over four words long, and most were simply one to two word responses. [See generally AR at 26-30.] Based on this, it seems highly improbable that the ALJ could make a determination from plaintiff's extremely limited hearing testimony that plaintiff's speech met the definition of "functionally efficient," i.e., that he had the "ability to produce and sustain a serviceably fast rate of speech output over a useful period of time." SSR 82-57. This comprises yet another example of the ALJ substituting her own lay opinion and making an assessment of the "functional efficiency" of plaintiff's speech beyond what is demonstrated by the record.

Additionally, by the time of the September 2010 hearing, plaintiff had undergone additional medical treatment including drainage of fluid in May 2009 [AR at 456-59], and surgical excision of a cyst in March 2010. [AR at 445-47.] Plaintiff acknowledged at the hearing that after the first procedure there was a little bit of improvement in his ability to speak, and that after the second procedure in 2010, there was even more improvement. [AR at 234-36.] The ALJ also acknowledged at the second hearing that she was "familiar with the [medical] procedures subsequent [to the prior hearing], *and the improvement to this gentleman's ability to communicate.*" [AR at 230 (emphasis added).] Indeed, a review of the hearing transcript shows that plaintiff provided somewhat more involved responses to the questions he was asked at the

second hearing[11] than he did at the first hearing. [See, e.g., AR at 230-43.] That fact, however, is inconsequential because, as argued by plaintiff, plaintiff's ability to communicate more effectively at the second hearing in September 2010, resulting at least in part from the two intervening surgical procedures, did not reflect on the severity of his speech impairment during the relevant period of August 24, 2006, through March 31, 2009. [JS at 6.]

Finally, the fact that the VE testified that taking into account plaintiff's communication limitations there were jobs that plaintiff could perform, also is not relevant to the determination of whether plaintiff's speech impairment meets Listing 2.09. Indeed, Listing 2.09 requires that an individual be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in vocational and social settings. Therefore, being able to perform a job that requires little or no useful communication is irrelevant if the individual also cannot produce such speech in a social setting. There is no such evidence in the record herein. Moreover, if an impairment or combination of impairments meets or equals a Listing, disability is conclusively presumed and benefits awarded. 20 C.F.R. § 416.920(a)(4)(iii) ("If you have an impairment[] that meets or equals one of our listings . . . and meets the duration requirement, we *will find that you are disabled.*") (emphasis added).

For the reasons set forth above, substantial evidence does not support the ALJ's finding that plaintiff's speech impairment does not meet Listing 2.09 prior to April 1, 2009, and remand is warranted.

**B.  TREATING PHYSICIAN**

Plaintiff argues that the ALJ erred in rejecting the opinions of plaintiff's treating physician, Dr. Mesrobian. [JS at 10-13, 15-16.]

---

[11] Of course, the Court cannot glean from the written transcripts whether plaintiff had problems with speech cessation at either of the hearings, although the ALJ states that plaintiff had such problems at both hearings. [See, e.g., AR at 208 (noting that she had "observed that the claimant's cessation of speech at the *hearings* appeared to stem . . . from feelings of anxiety . . .") (emphasis added).]

In her 2011 Decision, the ALJ concluded that Dr. Mesrobian's opinions were entitled to "limited value," and gave the same three reasons she gave in her 2008 Decision -- reasons the Court previously determined were legally insufficient. [AR at 17, 209, 283-88.] These reasons are no more legally sufficient the second time around and the Court sees no need to discuss this same issue again herein.

For the same reasons discussed by this Court in its 2009 Opinion, the Court finds that the ALJ again failed to provide legally sufficient reasons for rejecting the opinions of Dr. Mesrobian and remand is warranted. [See AR at 283-88.]

**C.    CREDIBILITY**

In her 2008 Decision, the ALJ found that the medical evidence did not support plaintiff's complaints. [AR at 16-17, 281.] This Court found that the ALJ failed to sufficiently explain how the medical evidence undermined plaintiff's credibility, especially given the fact that the ALJ recognized that plaintiff's testimony was consistent with the findings of Dr. Mesrobian, and Dr. To, and consistent with the ALJ's own observations. [AR at 281-83 (citing AR at 17, 24-25, 28-30, 144, 149, 153-56).] Plaintiff argues that in the 2011 Decision, the ALJ again erred in finding plaintiff's statements regarding his symptoms not entirely credible. [JS at 16-17, 18-19; see also AR at 207 (finding plaintiff's statements "not entirely credible for the relevant time period").]

In her 2011 Decision, the ALJ again found that plaintiff's testimony regarding his symptoms was consistent with the findings of Dr. Mesrobian and Dr. To, and with the ALJ's own observations. [AR at 208.] In the 2011 Decision, however, the ALJ did not provide *any* specifics regarding her boilerplate finding that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the relevant time period." [AR at 207.] The Ninth Circuit has recently clarified that this simply is not sufficient. See, e.g., Treichler v. Comm'r of Soc. Sec. Admin., __ F.3d __, 2014 WL 7332774, at *9 (9th Cir. Dec. 24, 2014) (including only this "introductory remark" "falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence,' and 'the reason or reasons' upon which [her] adverse determination is based.") (citation omitted). The ALJ is required to "specifically identify the

13

testimony she . . . finds not to be credible and . . . explain what evidence undermines the testimony." Id. (internal quotation marks and citation omitted). The ALJ failed to do so in this case.

Moreover, such an error is not harmless. Id. at *10. The Court "cannot substitute [its] own conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." Id. (rejecting the government's argument that the court "can reasonably infer that the ALJ rejected [the claimant's] testimony to the extent it conflicted with [the] medical evidence" simply because the ALJ summarized that medical evidence) (citation omitted). The ALJ must provide some reasoning in order for the Court to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." Id. No such reasoning is present in the ALJ's 2011 Decision and remand is warranted.

## VI.

## **REMAND FOR AWARD OF BENEFITS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits. Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter v. Astrue, 504 F.3d, 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be

1  dispositive of the remand question in all cases, even where all three conditions are met). In
2  Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in
3  a published decision, clarified that the nature of the flexibility described in Connett is "properly
4  understood as requiring courts to remand for further proceedings when, even though all conditions
5  of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt
6  that a claimant is, in fact, disabled." Garrison, 759 F.3d at 1020-21.

   In this case, as discussed above, the ALJ has twice failed to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, and twice found that plaintiff's subjective symptom testimony was otherwise consistent with the opinions of plaintiff's treating doctors, the consulting examiner, and the ALJ's own observations. Additionally, the ALJ has twice failed to provide legally sufficient reasons for rejecting the opinions of plaintiff's treating physician, and twice failed to provide appropriate consideration as to whether plaintiff meets the requirements of Listing 2.09, by failing to properly develop the record with respect to whether plaintiff's speech was functionally efficient.

   Based on the record, the Court finds that if the opinions of plaintiff's treating sources and plaintiff's subjective statements are credited as true, then plaintiff would meet the requirements of Listing 2.09 in that between August 24, 2006, and March 31, 2009, he lacked the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time in social and vocational settings. Moreover, the Court sees no need to return the case to the Commissioner to make yet another determination as to whether plaintiff's treating source, and/or plaintiff's subjective complaints should be credited or rejected. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." Benecke, 379 F.3d at 595; see also Varney v. Sec'y of Health and Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988) ("Certainly there may exist valid grounds on which to discredit a claimant's pain testimony . . . . But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.") (emphasis added) (internal citation omitted). Plaintiff has already waited nearly nine years for a disability determination. [See AR at 200]; see also Benecke, 379 F.3d at 595 ("Remanding a disability claim

1 for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.") (internal quotation marks and citation omitted).

Under these circumstances, the Court is persuaded that "remanding for further administrative proceedings would serve no useful purpose and would unnecessarily extend [plaintiff's] long wait for benefits." Benecke, 379 F.3d at 595.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request that the final decision of the Commissioner be vacated is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for the award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 12, 2015

　　　　　　　　　　　　/s/ Paul L. Abrams
　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE